J-S21015-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
HAROLD JOHN MCGURL, JR. :
:
Appellant : No. 149 MDA 2023

Appeal from the Orders Entered December 19, 2022 and January 5, 2023
In the Court of Common Pleas of Schuylkill County Criminal Division at
No(s):  CP-54-CR-0002107-2016

BEFORE:   BOWES, J., NICHOLS, J., and PELLEGRINI, J.[*]

MEMORANDUM BY BOWES, J.:                          **FILED JULY 27, 2023**

Harold John McGurl, Jr. appeals *pro se* following the PCRA court's denial

of his motion for deoxyribonucleic acid ("DNA") testing pursuant to 42 Pa.C.S.

§ 9543.1 of the Post Conviction Relief Act ("PCRA"), and dismissal of his PCRA

petition.  We affirm.

This Court previously summarized the facts underlying this case as

follows:

> Appellant attacked the victim, Jordan Adams (the "Victim"), in the
> early morning hours of October 8, 2016.  The Victim is the brother
> of Shawn Parker[.]  Shawn Parker and Brittany Fenstermacher,
> Appellant's ex-girlfriend, were dating at the time of the incident.
> On the day of the attack, Appellant met Fenstermacher in a public
> park where they shared a six-pack of beer.  They then went to a
> bar called the Drunken Monkey.  While at the bar, Parker called
> and texted Fenstermacher numerous times.   As the evening

---

[*] Retired Senior Judge assigned to the Superior Court.

progressed, Appellant became more and more belligerent and obnoxious and announced that he planned to get into a fight with Parker. Before leaving the Drunken Monkey, Krystal Semerod, a bar patron, gave Appellant, at Appellant's request, a knife.

After Appellant and Fenstermacher left the Drunken Monkey to walk home, Appellant saw the Victim driving the car that Appellant had observed Parker and Fenstermacher driving in earlier that day. The Victim parked and exited the car not far from where Appellant and Fenstermacher were standing. When the Victim turned around, he saw Appellant holding a knife above his head. Appellant asked the Victim if he was Parker's brother; the Victim answered in the affirmative; and Appellant informed the Victim that Appellant was going to "end" the Victim.

Appellant proceeded to attack the Victim with the knife, slashing at his head, neck, and face. The Victim fought back and Appellant then stabbed him in multiple parts of his body, including his tricep, bicep, and shoulder.

When the Victim arrived at the emergency room, he was in hemorrhagic shock due to blood loss. The Victim received intravenous therapy and blood transfusions and doctors performed emergency surgery on him. The Victim survived, but continue[d] to have limited mobility in his arm.

*Commonwealth v. McGurl*, 217 A.3d 418 (Pa.Super. 2019) (non-precedential decision at 1-3).

Based upon the foregoing, the Commonwealth charged Appellant with one count each of attempted murder and recklessly endangering another person, and two counts each of aggravated and simple assault. Appellant proceeded to a jury trial, where he testified that he had been acting in self-defense. The Commonwealth's evidence included, *inter alia*, a hat and a knife. The Victim identified the hat as the one he was wearing during the attack. *See* N.T. Jury Trial, 4/2-3/18, at 72-73. It had sustained damage to the bill, which the Commonwealth argued was consistent with being sliced by a knife.

*See id*. at 136, 138, 167 (describing damage through bill of the hat); *id*. at 310 (Commonwealth arguing that the hat was damaged by Appellant stabbing at the Victim's head). As for the knife, police had recovered it from a storm drain at Appellant's direction following the altercation. *Id*. at 176, 195-96. At trial, Appellant identified it as the knife given to him by Ms. Semerod and claimed that he accidentally dropped it down the storm drain. *Id*. at 214, 230.

At the conclusion of the trial, the jury found Appellant guilty of all charges. The trial court sentenced him to an aggregate term of ten to twenty years of incarceration and ordered him to pay restitution. Appellant did not file post-sentence motions but did appeal to this Court, challenging the sufficiency of the evidence to sustain his conviction for attempted murder. We affirmed the judgment of sentence and our Supreme Court denied his petition for allowance of appeal. *See McGurl*, *supra*, *appeal denied*, 218 A.3d 382 (Pa. 2019).

Thereafter, Appellant *pro se* filed his first PCRA petition, alleging that trial counsel was ineffective due to a conflict of interest. The PCRA court appointed counsel, who filed a no-merit letter and petition to withdraw. The court denied counsel's petition and held an evidentiary hearing on Appellant's claim. After the hearing, counsel again filed a no-merit letter and request to withdraw. Appellant, meanwhile, *pro se* sought the appointment of new counsel. The PCRA court granted counsel's motion to withdraw and denied both Appellant's petition and his request for new counsel. On appeal to this

Court, we affirmed the PCRA court's order. **See Commonwealth v. McGurl**, 277 A.3d 1168 (Pa.Super. 2022) (non-precedential decision).

On June 21, 2022, Appellant *pro se* filed a second PCRA petition, requesting that all evidence be submitted for DNA testing. Specifically, Appellant sought to have the hat tested because he alleged for the first time that it actually belonged to him, and further sought to have the knife tested for fingerprints and DNA.[1] After issuing Pa.R.Crim.P. 907 notice, the PCRA court dismissed Appellant's petition. Appellant did not appeal to this Court.

Instead, on October 24, 2022, Appellant *pro se* submitted another filing ("October Motion"), styled as a post-sentence motion for a new trial based upon after-discovered evidence. This filing renewed Appellant's request for DNA testing of all evidence. Construing the October Motion as a PCRA request for DNA testing pursuant to § 9543.1, the PCRA court provided the Commonwealth the opportunity to respond and directed that the evidence be

---

[1] Throughout the subsequent PCRA pleadings, Appellant has averred that a second knife was recovered by Trooper Christopher Michael Rooney and that Appellant did not know about the second knife until Trooper Rooney testified at trial. **See**, **e.g.**, Appellant's brief at unnumbered 2. As such, Appellant's request for DNA testing encompasses both knives. However, Appellant's bald averment of the existence of a second knife is belied by the record. Trooper Rooney's testimony detailed his involvement in Appellant's apprehension and recovery of the knife from the storm drain. **See** N.T. Jury Trial, 4/2-3/18, at 174-181. At no point did he mention a second knife and, while it is not our burden to scour every corner of the record to support Appellant's unsubstantiated claim on his behalf, our thorough review of the certified record has revealed no indication of a second knife. Accordingly, our review concerns only the knife that Appellant acknowledged possessing during the fight and thereafter discarding in a storm drain.

- 4 -

preserved. *See* Order, 10/31/22. The Commonwealth did not file a response. Ultimately, the PCRA court denied the motion because the request was not timely made and because it found there was "no reasonable possibility that testing would produce exculpatory evidence that would establish [Appellant's] actual innocence[.]" Order (October Motion), 12/19/22.

In the meantime, Appellant *pro se* filed a document styled as a motion for extraordinary relief ("November Petition"). *See* Rule 704(a) Motion for Extraordinary Relief, 11/14/22, at unnumbered 1. The relief sought was unclear, but Appellant once again argued that the hat and knife should have been subjected to DNA testing and that such testing would prove his innocence. Without explicitly challenging the effective assistance of any of his attorneys, Appellant claimed that his pre-trial and post-trial requests for the items to be tested had been ignored. *See id*. (stating that he "request[ed] before trial [and] after trial various times that DNA testing needed to be done" and "Attorney Stine [told] defendant that no fingerprints or blood were ever found on the knife").

The PCRA court construed the November Petition as an untimely PCRA petition filed more than one year after Appellant's judgment of sentence became final and, accordingly, issued notice of its intent to dismiss on that basis. *See* Order (November Petition), 12/19/22. Appellant filed a response assailing the lack of DNA testing, for the first time explicitly claiming that trial counsel was ineffective for failing to request DNA testing, and seeking an extension of time to amend his request because his mail delivery had been

delayed due to his inmate housing status. On January 5, 2023, the PCRA court dismissed the November Petition as an untimely PCRA petition.

This appeal followed. In his notice of appeal, Appellant referenced "an appeal for extraordinary relief for post-trial DNA testing[.]" Notice of Appeal, 1/27/23 (cleaned up). He then attached the orders pertaining to both the October Motion and the November Petition. The PCRA court ordered Appellant to file a Rule 1925(b) statement. After Appellant failed to timely file a concise statement, the PCRA court entered an order in lieu of opinion, directing us to its December 19, 2022 order disposing of the October Motion. Thereafter, Appellant's concise statement was docketed.[2]

_____

[2] Appellant's concise statement was due on or before February 24, 2023. As the statement was docketed on March 31, 2023, it was patently untimely. This Court has considered untimely concise statements when the trial court nonetheless addressed the issues because the untimely filing of a concise statement constitutes *per se* ineffective assistance of counsel. **See Commonwealth v. Boniella**, 158 A.3d 162, 164 (Pa.Super. 2017) (noting that "where the trial court addresses the issues raised in an untimely Rule 1925(b) statement, we need not remand but may address the issues on their merits" (cleaned up)). However, this Court's rationale for doing so "disappears where it is filed by a *pro se* litigant" because "a *pro se* litigant cannot be ineffective on his or her own behalf." **Id**. (cleaned up).

This would normally result in waiver of all of Appellant's claims. **See id**. However, Appellant's concise statement was self-dated February 8, 2023. Moreover, Appellant appended a note after the affidavit and proof of service page, which was self-dated March 25, 2023, indicating that Appellant had delivered his concise statement to prison authorities on February 9, 2023, and only learned of its non-delivery upon his release from the restrictive housing unit on March 25, 2023, and thereafter mailed it again. **See** Concise Statement, 3/31/23, at unnumbered 4.

*(Footnote Continued Next Page)*

- 6 -

This Court issued a rule to show cause order as to why the appeal, which did not contain the date of the order appealed from, should not be quashed as having been taken from an order not entered on the docket, in violation of Pa.R.A.P. 301(a)(1). Appellant responded, indicating that he lacked the date of the order due to his housing status. This Court discharged the rule and referred the issue to this panel. Meanwhile, Appellant filed his brief in this Court.

_____

"[T]he prisoner mailbox rule provides that a *pro se* prisoner's document is deemed filed on the date he delivers it to prison authorities for mailing." ***Commonwealth v. Chambers***, 35 A.3d 34, 38 (Pa.Super. 2011) (citation omitted). ***See also*** Pa.R.A.P. 121(f) ("A *pro se* filing submitted by a person incarcerated in a correctional facility is deemed filed as of the date of the prison postmark or the date the filing was delivered to the prison authorities for purposes of mailing as documented by a properly executed prisoner cash slip or other reasonably verifiable evidence.").

> Our Supreme Court has provided a non-exhaustive list of the types of evidence a *pro se* prisoner may present to prove that he mailed a notice of appeal within the deadline. Our Supreme Court has also clearly stated that we are inclined to accept any reasonably verifiable evidence of the date that the prisoner deposits the appeal with the prison authorities. In this vein, we may regard a self-dated notice of appeal as plausible evidence of mailing . . ., particularly where the opposing party does not contest such a date.

***Commonwealth v. Powell***, 290 A.3d 751, 756 n.9 (Pa.Super. 2023) (cleaned up).

Here, Appellant self-dated the concise statement February 8, 2023, and the Commonwealth has offered no objection to this averment. ***See*** Commonwealth's brief at 6 (stating, incorrectly, that the PCRA court did not order Appellant to file a Rule 1925(b) statement and that none was filed). Accordingly, we regard the hand-written date and appended note as plausible evidence of mailing and will consider the concise statement timely under the prisoner mailbox rule.

Preliminarily, this Court is unable to ascertain from which order Appellant is actually appealing. Not one of Appellant's appellate filings provides illumination on this query. His brief is handwritten and unnumbered, contains various exhibits throughout, and is not separated into different sections. From what we can glean from his brief, Appellant is seeking to challenge the PCRA court's denial of his request for DNA testing, as well as trial counsel's effectiveness in failing to pursue DNA testing before or after trial.[3] Based upon the first argument, the Commonwealth and PCRA court deduced that Appellant purported to appeal solely from the December 19, 2022 order denying his October Motion. **See** Commonwealth's brief at 5 n.6; Order in Lieu of Opinion, 3/21/23, at unnumbered 1 n.1.

We agree that the lion's share of Appellant's arguments on appeal concern the PCRA court's decision to deny his request for DNA testing, thereby implicating the court's denial of his October Motion. However, Appellant also asserts that counsel was ineffective for failing to request DNA testing, which

_____

[3] Appellant also argues that the Commonwealth failed to adduce sufficient evidence of Appellant's specific intent to kill to sustain his attempted murder conviction. **See** Appellant's brief at unnumbered 8-10. As acknowledged by Appellant's citation to his brief on direct appeal, this Court already heard and rejected that precise argument. **Commonwealth v. McGurl**, 217 A.3d 418 (Pa.Super. 2019) (non-precedential decision at 4-6) ("As demonstrated by his actions, which occurred after he announced that he intended 'to end' the Victim, Appellant took substantial steps toward the commission of [first-degree murder], which resulted in the Victim's near-fatal blood loss and permanent injury."). Thus, it cannot served as a basis for PCRA relief. **See** 42 Pa.C.S. § 9543(a)(3) (providing that, to be eligible for relief, a PCRA petitioner must establish that the claim was not previously litigated or waived).

he raised in the November Petition proceedings. In this way, his brief also implicates the PCRA court's denial of the November Petition. Stated plainly, due to Appellant's reiterative post-conviction filings, vague notice of appeal, and confusing brief, we simply cannot determine with any certainty which order Appellant is appealing. What we can determine, however, is that regardless from which order Appellant purported to appeal, he is not entitled to relief.[4]

As with any denial of PCRA relief, "our standard of review calls for us to determine whether the ruling of the PCRA court is supported by the record and free of legal error." *Commonwealth v. Gacobano*, 65 A.3d 416, 419 (Pa.Super. 2013) (cleaned up). "When reviewing an order denying a motion for post-conviction DNA testing, this Court determines whether the movant satisfied the statutory requirements listed in [§] 9543.1. We can affirm the

_____

[4] With respect to the timeliness of Appellant's appeal, his notice was clearly filed within thirty days of the order denying his November Petition and was therefore timely. However, the notice was filed more than thirty days after the order denying his October Motion. Even applying Appellant's self-date pursuant to the prisoner mailbox rule, the notice of appeal would still be deemed late as it was dated thirty-one days after the filing of the order denying the October Motion. Nonetheless, because the PCRA court's failure to advise Appellant of his appellate rights constituted a breakdown in the court system, we decline to quash. *See*, *e.g. Commonwealth v. Stansbury*, 219 A.3d 157, 160 (Pa.Super. 2019) (collecting cases); *see also* Pa.R.Crim.P. 900(A) ("The rules in Chapter 9 apply to . . . cases under the Post Conviction Relief Act, 42 Pa.C.S. §§ 9541-9546[.]"); Pa.R.Crim.P. 907(4) ("When the petition is dismissed without a hearing, the judge promptly shall issue an order to that effect and shall advise the defendant by certified mail, return receipt requested, of the right to appeal from the final order disposing of the petition and of the time limits within which the appeal must be filed. The order shall be filed and served as provided in Rule 114.").

court's decision if there is any basis to support it, even if we rely on different grounds to affirm." ***Commonwealth v. Walsh***, 125 A.3d 1248, 1253 (Pa.Super. 2015) (cleaned up).

Beginning with the PCRA court's denial of the October Motion, we further set forth the following legal principles. Post-conviction requests for DNA testing are governed by § 9543.1, which provides in pertinent part as follows:

**(a) Motion.--**

(1) An individual convicted of a criminal offense in a court of this Commonwealth may apply by making a written motion to the sentencing court at any time for the performance of forensic DNA testing on specific evidence that is related to the investigation or prosecution that resulted in the judgment of conviction.

(2) The evidence may have been discovered either prior to or after the applicant's conviction. The evidence shall be available for testing as of the date of the motion. If the evidence was discovered prior to the applicant's conviction, the evidence shall not have been subject to the DNA testing requested because the technology for testing was not in existence at the time of the trial or the applicant's counsel did not seek testing at the time of the trial in a case where a verdict was rendered on or before January 1, 1995, or the evidence was subject to the testing, but newer technology could provide substantially more accurate and substantially probative results, or the applicant's counsel sought funds from the court to pay for the testing because his client was indigent and the court refused the request despite the client's indigency.

(3) A request for DNA testing under this section shall be by written petition and shall be filed with the clerk of courts of the judicial district where the sentence is imposed.

(4) DNA testing may be sought at any time if the motion is made in a timely manner and for the purpose of

- 10 -

demonstrating the applicant's actual innocence and not to delay the execution of sentence or administration of justice.

(5) Notwithstanding any other provision of law, a plea of guilty to a crime of violence, as defined in section 9714(g) (relating to sentences for second and subsequent offenses), or a confession given by an applicant concerning the offense for which the applicant was convicted, shall not prohibit the applicant from asserting actual innocence under subsection (c)(2) or the court from making a determination and ordering DNA testing under subsection (d)(2).

(6) The motion shall explain how, after review of the record of the applicant's trial, there is a reasonable possibility if the applicant is under State supervision, or there is a reasonable probability if the applicant is not under State supervision, or after review of the record of the applicant's guilty plea there is a reasonable probability, that the testing would produce exculpatory evidence that would establish:

> (i) the applicant's actual innocence of the offense for which the applicant was convicted;

> . . . .

**(b) Notice to the Commonwealth.--**

(1) Upon receipt of a motion under subsection (a), the court shall notify the Commonwealth and shall afford the Commonwealth an opportunity to respond to the motion.

(2) Upon receipt of a motion under subsection (a) or notice of the motion, as applicable, the Commonwealth and the court shall take the steps reasonably necessary to ensure that any remaining biological material in the possession of the Commonwealth or the court is preserved pending the completion of the proceedings under this section.

**(c) Requirements.--**In any motion under subsection (a), under penalty of perjury, the applicant shall:

(1)(i) specify the evidence to be tested;

(ii) state that the applicant consents to provide samples of bodily fluid for use in the DNA testing; and

(iii) acknowledge that the applicant understands that, if the motion is granted, any data obtained from any DNA samples or test results may be entered into law enforcement databases, may be used in the investigation of other crimes and may be used as evidence against the applicant in other cases.

(2)(i) in a sworn statement subject to the penalties under 18 Pa.C.S. §§ 4902 (relating to perjury) and 4903 (relating to false swearing), assert the applicant's actual innocence of the offense for which the applicant was convicted and that the applicant seeks DNA testing for the purpose of demonstrating the applicant's actual innocence; . . . .

(3) present a *prima facie* case demonstrating that the:

(i) identity of or the participation in the crime by the perpetrator was at issue in the proceedings that resulted in the applicant's conviction and sentencing; and

(ii) DNA testing of the specific evidence, assuming exculpatory results, would establish:

(A) the applicant's actual innocence of the offense for which the applicant was convicted;

. . . .

**(d) Order.--**

(1) Except as provided in paragraph (2), the court shall order the testing requested in a motion under subsection (a) under reasonable conditions designed to preserve the integrity of the evidence and the testing process upon a determination, after review of the record of the applicant's trial, that the:

(i) requirements of subsection (c) have been met;

(ii) evidence to be tested has been subject to a chain of custody sufficient to establish that it has not been altered in any material respect; and

(iii) motion is made in a timely manner and for the purpose of demonstrating the applicant's actual innocence and not to delay the execution of sentence or administration of justice.

(2) The court shall not order the testing requested in a motion under subsection (a) if, after review of the record of the applicant's trial, the court determines that there is no reasonable possibility for an applicant under State supervision, or there is no reasonable probability for an applicant not under State supervision, or after review of the record of the applicant's guilty plea, the court determines that there is no reasonable probability, that the testing would produce exculpatory evidence that:

(i) would establish the applicant's actual innocence of the offense for which the applicant was convicted;

. . . .

(3) Any DNA testing order under this section shall constitute a final order. An applicant or the Commonwealth may appeal a decision denying or granting a DNA testing order in accordance with the Pennsylvania Rules of Appellate Procedure.

(4) Any decision granting or denying a DNA testing order shall include an explanation by the court of how the testing requested in a motion under subsection (a) has met or fails to have met the requirements under paragraphs (1), (2) and (3).

. . . .

42 Pa.C.S. § 9543.1.

The PCRA court explained its reasons for denying the October Motion as follows:

- 13 -

The hat and knife were not subject to DNA testing. [Appellant's] counsel did not seek testing prior to or at the time of trial and never sought funds from the [c]ourt to pay for testing. The current request for DNA testing is not timely, and the motion does not explain how, after review of the record of the trial, there is a reasonable possibility that testing would produce exculpatory evidence that would establish [Appellant's] actual innocence. Notably, contrary to his current allegations, [Appellant] acknowledged at trial that he had possessed the knife. [Appellant] claimed that he had used it against the Victim while acting in self-defense. Similarly, at trial the Victim identified that hat as having been worn by him. The issues at trial did not involve questions about who possessed the hat and knife, or the identity of the assailant; rather, they were whether the [Appellant] attacked the Victim and had acted without justification in doing so.

Additionally, [Appellant] has not stated in his motion that he consents to provide samples of bodily fluids for use in DNA testing, acknowledges that he understands that any data obtained from the DNA samples or test results may be entered into law enforcement databases, may be used in the investigation of other crimes, and may be used as evidence against him in other cases.

Finally, no *prima facie* case has been alleged that the identity of or participation in the crime by [Appellant] was at issue at trial and that DNA testing of the hat and knife, assuming exculpatory results, would establish [Appellant's] actual innocence.

Order (October Motion), 12/19/2022, at 2 (cleaned up).

Upon review of the certified record, we agree with the PCRA court that Appellant's October Motion did not satisfy § 9543.1's requirements. First, the petition lacked Appellant's consent to provide samples for testing or an acknowledgement regarding the use of any results. Second, we discern no abuse of discretion in the PCRA court's finding that any exculpatory DNA evidence pertaining to the hat and knife would not establish Appellant's actual innocence because neither possession of those items nor Appellant's identity

- 14 -

was in dispute at trial. Finally, Appellant's request for DNA testing was not timely where the hat and knife were discovered and available prior to trial, DNA testing technology existed at the time of Appellant's trial, the jury reached its verdict after January 1, 1995, and the trial court did not refuse a request for funds for DNA testing. **See** 42 Pa.C.S. § 9543.1(a)(2). Detecting no error in the PCRA court's conclusions, we affirm the order denying Appellant's October Motion for DNA testing. **See Commonwealth v. Walsh**, 125 A.3d 1248, 1258 (Pa.Super. 2015) (concluding that defendant "failed to satisfy the threshold requirements to obtain DNA testing pursuant to [§] 9543.1(a)(2); he did not present a *prima facie* case of actual innocence pursuant to [§] 9543.1(c)(3); and he failed to make his request for DNA testing in a timely manner pursuant to [§] 9543.1(d)(1)(iii)").

Next, we address the PCRA court's dismissal of Appellant's November Petition and his claim that trial counsel was ineffective for failing to request DNA testing. Instead of considering the merits of any arguments raised in the November Petition or the response to the PCRA court's notice of intent to dismiss, the PCRA court dismissed the November Petition as untimely. **See** Order, 1/5/23.

It is axiomatic that neither this Court nor the PCRA court has jurisdiction to consider an untimely PCRA petition. **See Commonwealth v. Ballance**, 203 A.3d 1027, 1030-31 (Pa.Super. 2019). All PCRA petitions, including second or subsequent petitions, must be filed within one year of the date that

- 15 -

the underlying judgment of sentence becomes final. ***See*** 42 Pa.C.S.

§ 9545(b)(1). The PCRA statute provides that "a judgment becomes final at

the conclusion of direct review, . . . or at the expiration of time for seeking

the review." 42 Pa.C.S. § 9545(b)(3).

Instantly, Appellant's judgment of sentence became final in 2019. The

November Petition, filed in 2022, was patently untimely. Therefore, Appellant

had the burden to plead and prove one of the enumerated exceptions to the

PCRA's time-bar before the PCRA court could consider the merits of any of his

claims. In this respect, the PCRA statute provides as follows:

> Any petition under this subchapter, including a second or subsequent petition, shall be filed within one year of the date the judgment becomes final, unless the petition alleges and the petitioner proves that:
>
> > (i) the failure to raise the claim previously was the result of interference by government officials with the presentation of the claim in violation of the Constitution or laws of this Commonwealth or the Constitution or laws of the United States;
> >
> > (ii) the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence; or
> >
> > (iii) the right asserted is a constitutional right that was recognized by the Supreme Court of the United States or the Supreme Court of Pennsylvania after the time period provided in this section and has been held by that court to apply retroactively.

42 Pa.C.S. § 9545(b)(1). A petitioner invoking one of these exceptions must

file a petition "within one year of the date the claim could have been

presented." 42 Pa.C.S. § 9545(b)(2).

- 16 -

In the case *sub judice*, Appellant failed to invoke any of the timeliness exceptions in his November Petition. Moreover, the PCRA court found as follows in its notice of intent to dismiss:

[N]o facts are alleged by [Appellant] to support a finding that an exception may exist to the requirement that a post-conviction collateral relief motion be filed within one year of the date the judgment of sentence becomes final.

. . . .

[Appellant] fails to identify any facts upon which his current claims are predicated which were unknown to him or could not have been ascertained by the exercise of due diligence within the requisite period to seek post-conviction collateral relief. Moreover, the DNA testing and alleged failure to identify the possessor of the knife and hat have been issues previously raised and addressed.

Order (November Petition), 12/19/22, at 1-2.

Since Appellant failed to plead and prove an exception to the PCRA's time-bar, the PCRA court did not err in dismissing this petition as untimely. *See Walsh*, *supra* at 1252 (declining to review claim that trial counsel was ineffective for failing to request DNA testing as part of post-conviction motion for DNA testing and noting that petitioners must raise such claims in a PCRA petition that is either timely filed or satisfies one of the timeliness exceptions).

In sum, the PCRA court did not err in denying the October Motion or dismissing the November Petition, and Appellant is not entitled to relief in this collateral appeal.

Orders affirmed.

Judge Pellegrini joins this Memorandum.

- 17 -

Judge Nichols concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 07/27/2023